**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIE RICHARD POSEY,

      Petitioner,              Civil No. 2:10-CV-12915
                                HONORABLE DENISE PAGE HOOD

v.

CARMEN D. PALMER,

      Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Willie Richard Posey, ("Petitioner"), confined at the Pugsley Correctional Facility in Kingsley, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions of three counts of armed robbery, M.C.L.A. § 750.529.  For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

### I.  Background

Petitioner was convicted of three counts of armed robbery following a jury trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are

1

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

*See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On the evening of January 1, 2008, Jasmine Banks, Tiara Davis, and Leslie Sanford were robbed outside of their grandmother's Detroit home. All three victims identified Posey as one of two robbers. The defense theory was misidentification based on differences between the victims' descriptions to the police on the night of the incident and Posey's appearance in court.
>
> Banks and Davis, who were attending a gathering at the home, left the house to walk to a car parked in front of the house. Davis noticed two men walking nearby. As Banks and Davis continued walking toward the car, Banks heard someone say, "Don't move." Banks looked directly at the man's face and saw Posey pointing an object that appeared to be a gun at her face. Posey demanded money, but Banks said she had no money, so Posey then snatched her purse. When Banks ran around the side of the car, a white man, later identified as Neil Bilbrey, blocked her, demanded money, and directed her to be quiet. Banks again stated that she did not have any money and threw her coat at Bilbrey to prove she had nothing.
>
> Banks and Davis explained that in the meantime, Posey had approached Davis on the other side of the car, pointed the object at her face, and demanded money. When Davis responded that she had no money, Posey also snatched her purse. Unbeknownst to Banks and Davis, Sanford, Davis's brother, was sitting in the front seat of the car talking on a cell phone. Sanford indicated that when he realized a robbery was taking place, he opened the car door, but before he could get out, Posey struck him in his mouth with an object that was either "a play gun or a real gun." Sanford returned a punch and, in turn, Posey pointed the gun at him, demanded money, and took his cell phone from his hand. By this time, other people had come out onto the porch, observed what was happening, went back in the house, and returned with several others. Posey and Bilbrey fled, but the group gave chase,

eventually catching Bilbrey.

The witnesses provided descriptions of Posey to the police. Upon Bilbrey's arrest, he claimed that Posey forced him to participate in the robbery and provided information about Posey's location. The police went to a vacant house where they observed Bilbrey's girlfriend, Ashley Kurtz, and a black man outside the house. After confirming that Kurtz was not being held against her will, the officers entered the house where they found and arrested Posey because he matched the description of the robber.

The next day, Banks and Davis identified Posey as the robber in a corporal lineup. Michael Blake, one of the family members who chased Posey following the robbery, could not identify anyone in the lineup. Sanford did not attend a lineup. At trial, Banks, Davis, and Sanford identified Posey and indicated that they were certain about their identification. Banks, Davis, Sanford, and a police officer explained that since his arrest on the night of the incident, Posey appeared to have gained weight, gained muscle or "beefed up," changed his hair, and his skin appeared lighter.

*People v. Posey,* No. 289820, 2010 WL 143466, at 1 (Mich.Ct.App. Jan. 14, 2010).

Petitioner's conviction was affirmed on appeal. *Id.; lv.den.* 486 Mich.

1046, 783 N.W.2d 376 (2010).

Petitioner filed a petition for writ of habeas corpus, raising the

following two grounds for relief:

I.     Mr. Posey was denied due process of law by a police detective's improper opinion at trial that Mr. Posey appeared to be a "narcotics user," and by the eyewitnesses' exposure to improperly suggestive identification procedures immediately before trial.

3

II.     Mr. Posey was denied a fair trial and his constitutional right to the effective assistance of counsel by his attorney's failure to request the appointment of an expert on eyewitness identification.

On March 23, 2011, the petition was held in abeyance so that petitioner could return to the state courts to exhaust additional claims.

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.*, which the court denied. *People v. Posey*, No. 08-833-01-FC (Wayne County Circuit Court, Feb. 22, 2012). The Michigan appellate courts denied petitioner leave to appeal. *People v. Posey,* No. 309530 (Mich.Ct.App. Sept. 19, 2012); *lv. den.* 493 Mich. 952, 828 N.W.2d 53 (2013).

On November 25, 2013, the Court reopened the case to the Court's active docket.  In his amended habeas petition, petitioner seeks relief on the following grounds:

I.      The people committed fraud upon the district court where the identification line up procedures was tainted by police misconduct in that they deliberately failed, and or neglected to properly record their action, and thus the entire procedures should have been suppressed and voided.

II.     Fourth amendment violation where the police never had probable cause to enter the "private home" where Defendant-Appellant Posey and a friend was located and arrest Defendant without a search warrant or

4

arrest warrant.

III.    Ineffective assistance of counsel where counsel (a) failed to conduct any meaningful post-arrest and or pretrial investigation into the facts surrounding the case; (b) failed to properly interview and call relevant witnesses; (c) failed to make a proper motion before the court, moving to suppress the line-up, and all other evidence obtained following defendant-appellant's illegal and unlawful arrest; (d) failed to make proper motion before the court moving the court for a competency hearing to determine if in fact defendant-appellant was competent to stand trial given defendant-appellant's mental competency, and if so competent, his failure to raise and plead in the alternative the defense of mental illness; (e) failed to conduct a proper pretrial investigation, and call defendant-appellant's alleged co-defendant, his girlfriend, and other person's (sic) defendant-appellant was with, at the time of his arrest as alibi witnesses.

IV.    Prosecutorial misconduct where the prosecutor, (a) committed fraud on the court in deliberately showing the witnesses defendant-appellant's picture prior to trial and allowing them to conspire in conjunction with one another to deprive defendant-appellant of his federally protected rights under the due process clause, in violation of title 18 U.S.C. § 241-242-cause and prejudice.

V.     Defendant-Appellant Posey was deprived of effective assistance of counsel on direct appeal when appellate counsel failed, after reading the record, and being employed by defendant, to raise issues that were both "obvious and significant" for no apparent

5

strategic purpose.[1]

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision

---

[1] Grounds 1 through 5 in petitioner's amended habeas petition will be considered by this Court as grounds 3 through 7 because the first two claims contained in petitioner's original petition were not incorporated into the amended petition.

6

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*

7

*v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*  Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*,  132 S. Ct. 1195, 1199 (2012).

### III.  Discussion

### A.  Claim # 1. Denial of Due Process by failure to declare a mistrial.

Petitioner alleges that he was denied due process when the trial court denied his motion for a mistrial following testimony given by a police officer that petitioner looked like a "narcotics user" at the time of his arrest.

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *See Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

The Michigan Court of Appeals rejected petitioner's claim that he

8

was entitled to a mistrial, finding that the answer given by Sergeant

Hughes was non-responsive to the prosecutor's question and the judge

instructed the jurors to disregard the comment. *Posey,* 2010 WL 143466,

at 2.  Because the brief remark was unsolicited by the prosecutor, the

failure to declare a mistrial did not deprive petitioner of a fair trial,

particularly when this remark was a small part of the evidence against

petitioner and the trial court judge immediately instructed the jury to

disregard the comment. *See U.S. v. Martinez,* 430 F. 3d 317, 337 (6th Cir.

2005); *see also United States v. Beamus*, 110 Fed. App'x. 513, 517 (6th

Cir. 2004)(testimony that defendant was "on the run" from probation was

not *per se* prejudicial, so as to warrant mistrial, where jury immediately

told to disregard that single, isolated remark ); *United States v. Harris*, 165

F. 3d 1062, 1066 (6th Cir. 1999)(police officer's allusion to defendant's

prior arrest did not require a new trial since it was isolated and district

court gave an immediate curative instruction); *United States v. Forrest*, 17

F. 3d 916, 920 (6th Cir.1994)(court did not abuse its discretion in not

granting defendant's motion for mistrial, though agent's statement

regarding defendant's previous incarceration directly contravened judge's

specific warning, where judge provided clear admonition).

9

Not only did the trial court judge tell the jury to disregard Sergeant Hughes' comment, he clearly instructed the jury that Hughes' statement concerning petitioner consisted of "unsolicited, unwarranted comments about Mr. Posey appearing to be some kind of drug user," and further added, "He knows that was wrong to say and I think he is just trying to prejudice you." (Tr. 9/23/2008, p. 150).

Furthermore, the judge's final instructions to the jury advised them not to consider anything that had not been admitted into evidence. (Tr. 9/23/08, p. 242).  A jury must be presumed to have followed a trial court's instructions. See *Washington v. Hofbauer*, 228 F. 3d 689, 706 (6th Cir. 2000).  The trial court's prompt and forceful instruction to the jury that they should disregard Sergeant Hughes' testimony about petitioner looking like a narcotics user at the time of his arrest, when coupled with the trial court's final instruction, was sufficient to remove any possible prejudice from Sergeant Hughes' remark.  Petitioner has therefore failed to show that the trial court's failure to declare a mistrial was an abuse of discretion. Petitioner is not entitled to habeas relief on his first claim.

**B. Claims ## 3 and 6.  The line up procedure and prosecutorial misconduct claims.**

The Court will consolidate claims three and six as they are

10

interrelated.

Petitioner alleges that a fraud was committed upon the court when the police deliberately failed or neglected to properly record their actions during the line up and as a result the entire procedure should have been suppressed.

Petitioner also alleges that the prosecutor committed a fraud upon the court by deliberately showing petitioner's picture to the witnesses prior to trial, thereby allowing the witnesses to conspire against him.

1. The line up.

Petitioner alleges that the line up procedure was tainted by the police when they deliberately failed or neglected to properly record their actions during the line up procedures.

Petitioner raised his claim pertaining to the tainting of the line up in his motion for relief from judgment. The facts relied upon by petitioner in his habeas petition allege that the officer in charge informed the prosecutor that the victims and witnesses were brought to the precinct the night of the robbery and that everybody was there. Petitioner alleges that bringing the victims and witnesses together tainted the line up. He also claims that Ashley Kurtz and the owner of the abandoned house were not

presented as witnesses at trial.

The trial court denied his claim on the merits finding:

The defendant claims that the prosecutor perpetrated a fraud on the court when she did not call the girlfriend of the codefendant to testify that she talked to the witnesses at the police station before they viewed an identification lineup.  He claims that the prosecutor withheld exculpatory evidence, such as not disclosing that the defendant's arrest was illegal and not calling a witness named Sam and the owner of the abandoned house where he was arrested.  He also complains about references to a jacket worn by the defendant during the identification lineup.

The defendant's claims have no merit. The prosecutor was not required to call the girlfriend of the codefendant because she was not a res gestae witness to the armed robbery.  Further, the defendant's bare claims that she talked to the witnesses is not supported in the record or by her affidavit supporting his claim. The prosecutor did not withhold exculpatory evidence. The defendant could have called the owner of the abandoned house or the person he calls Sam as his own witnesses if he believed they would have presented relevant testimony. The defendant does not explain how their testimony would have affected the trial or what their testimony might have been.

*People v. Posey*, No. 08-833-01-FC, at 2.

Violations of state law and procedure which do not infringe specific

federal constitutional protections are not cognizable claims under Section

2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Jones v.*

*Smith,* 244 F. Supp. 2d 801, 814 (E.D. Mich. 2003).

Federal law does not require the production of *res gestae* witnesses.

12

*Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001).

Michigan law's requirement that the prosecutor produce *res gestae*

witnesses is simply a matter of state law which enforcement is beyond the

scope of federal habeas review. *See Collier v. Lafler,* 419 Fed. App'x. 555,

559 (6th Cir. 2011).  "[U]nder federal law, there is no obligation on the part

of the prosecutor to call any particular witness unless the government has

reason to believe that the testimony would exculpate the petitioner." *Atkins*

*v. Foltz*, 856 F. 2d 192 (Table), 1988 WL 87710, * 2 (6th Cir. August 24,

1988)(citing to *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir.

1972)).  Whether a prosecutor exercised due diligence in attempting to

locate a *res gestae* witness is outside the scope of federal habeas review.

*Collier,* 419 Fed. App'x. at 559.

Petitioner has offered no evidence, other than speculation, that

Kurtz or "Sam" or the owner of the house would have provided exculpatory

evidence.  As the prosecutor did not withhold exculpatory evidence, was

not required to call petitioner's codefendant's girlfriend as a witness, and

petitioner had the opportunity to call Kurtz and Sam as his own witnesses,

petitioner has failed to establish that he is entitled to relief on his third

claim.

2. The photograph shown to witnesses.

Petitioner alleges that the prosecutor committed a fraud upon the court by showing his picture to the witnesses before trial to conspire against him.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972). Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that elapsed between the time and the confrontation. *Id*. at 199-200.

14

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive.  It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240, n. 31(1967).  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner is unable to establish that the trial court abused its discretion by denying a mistrial based on the showing of a single photo to Michael Blake by Tiara Davis before trial.  The prosecutor provided paperwork to Davis that contained petitioner's booking photograph.  Davis in turn showed the photograph to Jasmine Banks and Michael Blake. Michael Blake, one of the family members who chased petitioner after Banks and Davis were robbed, could not identify anyone in the line up on

15

the day after the robbery, but was able to identify petitioner at trial.

The Michigan Court of Appeals applied eight factors in its analysis in determining the reliability of identification evidence and found by "considering the victims' substantial opportunity to observe Posey and the totality of the circumstances, the trial court did not clearly err in finding that there was an independent basis for their identifications." *Posey,* 2010 WL 143466, at 4. Both Jasmine Banks and Tiara Davis identified petitioner "at a line up immediately and had seen him at the preliminary examination and at other court hearings." *Id.* at 3. The Court of Appeals further found:

> Here, Banks and Davis did not have a prior relationship with Posey, but each testified that she was certain of her identification of him as the robber. Banks testified that the robbery occurred over the course of five to seven minutes, and both witnesses testified that they had a good opportunity to observe Posey during the incident. Posey was only a short distance from each victim when he pointed a gun, demanded money, and snatched the purses from their hands. Banks explained that Posey was "right on the side of [her]" and she "looked directly at his face." Davis explained that she got a "good look at" Posey and "looked him dead in his eyes." The area was sufficiently lit by a porch light and streetlight.
>
> Thus, the witnesses had a substantial opportunity to view Posey. In addition, Banks and Davis had both identified Posey in a corporal lineup the day after the robbery. Banks identified Posey within "30 seconds," and Davis identified him immediately. Davis explained that she could identify Posey "as soon as [she] saw him" because she "could not forget that face" and "could not get the picture of him out of her mind." Banks explained that she

16

identified Posey because she remembered his face, hair, and the jacket he was wearing.

*Id.*

Courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F. 3d 459, 473 (6th Cir. 2005); *see also United States v. Meyer*, 359 F. 3d 820, 826 (6th Cir. 2004)(finding heightened degree of attention where witness spoke with robber and studied his features while looking for an opportunity to escape); *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001) (finding heightened degree of attention where robber confronted witnesses with a gun). In light of the fact that Jasmine Banks and Tiara Davis were being robbed at gunpoint, it was not unreasonable for the state courts to conclude that both Banks and Davis paid a high degree of attention to their assailant.

Petitioner challenges the characterization by the prosecutor that he was arrested based upon the ownership of a leather jacket and his height and the subsequent testimony given by Banks and Davis pertaining to the jacket. However, even if there were slight discrepancies between the initial description of petitioner's appearance by Banks and Davis, this

17

would be insufficient to render the in-court identification suspect, in light of the fact that Banks and Davis were able to get a good look at petitioner and testified that they were certain in their identification of petitioner as being the individual who robbed them. *See United States v. Hill,* 967 F. 2d at 232-33 (in-court identification of alleged bank robber held admissible despite five years between incident and trial and slight inaccuracies in witness' description of robber, where witness' view of robber was brightly lit and unobstructed and she showed high degree of certainty in her in-court identification).

The reliability of the in-court identification given by Banks and Davis is supported by the fact that they "testified without equivocation" that petitioner was their assailant. *Howard,* 405 F. 3d at 473.  Courts also look to other evidence to determine if the identification was tainted, whether permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 848 (E.D. Mich. 2001).

Given all of the evidence against petitioner, namely, the fact that he was caught by the police near the crime scene soon after the robbery in

18

an abandoned house, that he was wearing the same jacket identified by the victims as the jacket worn by the assailant, and his positive identification by Banks and Davis at the line up and preliminary exam, any error in admission of allegedly unreliable identification testimony given by Michael Blake pertaining to petitioner being the individual he chased on the night of the robbery was harmless error. *See Solomon v. Curtis,* 21 Fed. App'x. 360, 363 (6th Cir. 2001).

After reviewing all of the factors concerning the viewing of a single photo by a witness before trial, this Court concludes that production of the photo did not give rise to a substantial likelihood of irreparable misidentification. *See U.S. v. Causey,* 834 F.2d 1277, 1285 (6th Cir. 1987); *see also Kado v. Adams,* 971 F. Supp. 1143, 1148 (E.D. Mich. 1997).

The Michigan Court of Appeals' decision that the totality of factors weighing in favor of a finding of an independent basis for the in-court identification outweighed the few factors weighing against a finding of an independent source was not an unreasonable application of clearly established federal law.  Accordingly, petitioner is not entitled to habeas relief on his sixth claim. *See Robertson,* 144 F. Supp. 2d at 847-48.

19

To the extent that petitioner claims that the prosecutor deliberately showed the single photograph of petitioner to the witnesses to taint their identification, petitioner has presented no evidence to establish that the prosecutor intentionally showed the photograph to the witnesses to influence their identification of petitioner.  Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004).  Petitioner is not entitled to relief on his third and sixth claims.

### C. Claim # 4. Fourth Amendment Violation.

Petitioner alleges in his fourth claim that the police violated his Fourth Amendment rights when they lacked probable cause and entered his "private residence," arresting him and a friend without a search and arrest warrant.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could

20

raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F. 2d 51, 57 (3rd Cir. 1986)). Therefore, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown,* 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)).

21

Petitioner raised his Fourth Amendment claim in his motion for relief from judgment.  The trial court denied his claim on the merits finding that petitioner "did not have legal standing to contest the search of the abandoned house because he was not legally present in the building." Adding, "[w]ithout the legal authority to be there, the defendant lacked the 'legitimate expectation of privacy' in the premises to challenge the search." *People v. Posey*, No. 08-833-01-FC, at *3, 5 (Wayne County Cir.Ct. Feb. 22, 2012).  The trial court analyzed and rejected petitioner's claim.

The failure to conduct a hearing in the trial court on petitioner's search and seizure claim does not mean that petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claims. *See Good v. Berghuis,* 729 F. 3d 636, 638-40 (6th Cir. 2013); *reh'g denied* (6th Cir. Jan. 8, 2014), *cert. denied*, 135 S. Ct. 1174 (2015).  The Sixth Circuit in *Good* noted that "[t]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Id.* at 639.

The opportunity to litigate, for purposes of *Stone v. Powell,* encompasses more than an evidentiary hearing in the trial court.  It also

22

includes corrective action available through the appellate process on direct review of the conviction. *See Pulver v. Cunningham*, 419 F.Supp. 1221, 1224 (S.D.N.Y.1976); *see also Rashad v. Lafler,* 675 F. 3d 564, 570 (6th Cir. 2012)(petitioner had ample opportunities in state court to present his Fourth Amendment claims, precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004)(petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief).  Because all of the material facts were before the state trial court on petitioner's motion for relief from judgment, the appellate process was not deficient.  Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim and is therefore not entitled to relief.

### D. Claims ## 1 and 5. Ineffective Assistance of Trial Counsel.

23

The court will consolidate petitioner's first and fifth claims together since they are interrelated.

In claim one, petitioner alleges that trial counsel was ineffective for not calling an expert witness.

In claim five, petitioner alleges that trial counsel was ineffective when counsel: (a) failed to conduct any meaningful post-arrest and or pretrial investigation into the facts surrounding the case; (b) failed to properly interview and call relevant witnesses; (c) failed to make a proper motion before the court moving to suppress the line-up, and all other evidence obtained following defendant-appellant's illegal and unlawful arrest; (d) failed to make a proper motion before the court for a competency hearing to determine if in fact defendant-appellant was competent to stand trial given defendant-appellant's mental competency, and if so competent, his failure to raise and plead in the alternative the defense of mental illness; and (e) failed to conduct a proper pretrial investigation, and call defendant-appellant's alleged co-defendant, his girlfriend, and other persons defendant-appellant was with, at the time of his arrest as alibi witnesses.

To show that he was denied the effective assistance of counsel

24

under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to

25

show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation

when the case involves review under the *Strickland* standard

itself."*Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is

never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356,

371 (2010)).

In his first claim, petitioner contends that his trial counsel was

ineffective for failing to call an expert witness in the area of eyewitness

identification testimony.

As an initial matter, petitioner has presented no evidence, either to

the state courts or to this Court, that he has an expert witness who would

be willing to testify with respect to the issue of eyewitness identification.  A

habeas petitioner's claim that trial counsel was ineffective for failing to call

an expert witness cannot be based on speculation. *See Keith v. Mitchell,*

455 F. 3d 662, 672 (6th Cir. 2006).  Petitioner has offered, neither to the

Michigan courts nor to this Court, any evidence that an expert witness

would testify and what the content of this witness' testimony would have

been.  In the absence of such proof, the petitioner is unable to establish

that he was prejudiced by counsel's failure to call an expert witness to

testify at trial, so as to support the second prong of an ineffective

assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551*,* 557 (6th

27

Cir. 2007).

With respect to the petitioner's claim that counsel was ineffective for failing to call an expert on eyewitness identification, "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 Fed. App'x. 822, 833 (6th Cir. 2011); *see also Dorch v. Smith*, 105 Fed. App'x. 650, 653 (6th Cir. 2004)(upholding as reasonable the Michigan Court of Appeals's conclusion that defense counsel's failure to call an expert witness on eyewitness identification did not satisfy *Strickland*, because counsel "presented several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner).

Although counsel did not call an expert witness on the issue of eyewitness identification, trial counsel discredited Banks by eliciting an "admission that, after the robbery, she was uncertain if she could identify the assailant if she saw him again and questioned her about being more focused on the gun than on the perpetrator's face." *Posey,* 2010 WL

28

143466 at 5.  Trial counsel also cross-examined Banks and Davis about whether they identified petitioner based on what he wore (a black jacket) at the line up instead of his actual physical appearance and questioned both in regards to the description of how the robber looked on the night of the incident and how petitioner appeared at trial.

Petitioner was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of an expert witness on identification, where counsel elicited testimony to discredit the identification testimony of Banks and Davis. *See Greene v. Lafler,* 447 F. Supp. 2d 780, 794-95 (E.D. Mich. 2006).

Petitioner has also failed to show that he was prejudiced by counsel's decision not to call an identification expert.  As the Michigan Court of Appeals noted in rejecting petitioner's claim, *Posey,* 2010 WL 143466 at 6, "counsel was able to challenge the reliability and accuracy of the identification evidence through means of argument, cross-examination, and other evidence, Posey has failed to show that defense counsel was ineffective for failing to request the appointment of an identification expert, or that he was prejudiced by the absence of such an expert at trial."  Petitioner's first claim is without merit.

29

Petitioner alleges additional instances of ineffective assistance of counsel in his fifth claim.

Petitioner claims that trial counsel failed to conduct any meaningful post-arrest or pretrial investigation and failed to properly interview and call relevant witnesses.

Petitioner does not offer any argument as to how trial counsel was unprepared or how additional preparation time or the calling of additional witnesses would have aided petitioner's case. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct a meaningful post-arrest or pretrial investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F. 3d 594, 607-08 (6th Cir. 2002).

Petitioner alleges that trial counsel failed to move to suppress the line up and other evidence obtained following his arrest.

A defense attorney's failure to move to suppress an allegedly

30

unreliable identification is not ineffective absent a reasonable probability that the suppression motion would have resulted in a decision to exclude the testimony. See *Millender v. Adams*, 376 F.3d 520, 524-25 (6th Cir. 2004). Banks testified that the robbery occurred over a period of five to seven minutes and that she looked directly at petitioner's face, while Davis testified that she got a good look at petitioner and looked him dead in the eyes. Both Banks and Davis identified petitioner at the lineup, the day after the robbery, and at the preliminary examination. Based on the witnesses' testimony, there was not a reasonable probability that a suppression motion would have been successful. Petitioner cannot demonstrate that a motion to suppress the eyewitness identification of him would have been successful; therefore, he cannot show ineffective assistance of counsel. *See McCalvin v. Yukins*, 444 F.3d 713, 722 (6th Cir. 2006).

The decision to attack the credibility of the identification given by Banks and Davis of petitioner through cross-examination was a reasonable trial strategy that defeats this part of petitioner's ineffective assistance of trial counsel claim. *See Scott v. Elo,* 100 Fed. App'x. 332, 333-34 (6th Cir. 2004).

Petitioner alleges that trial counsel failed to file a motion asking for a competency hearing and failed to raise and plead in the alternative the defense of mental illness.

Petitioner is not entitled to habeas relief on this part of his fifth claim for several reasons. First, petitioner's claim is without merit because he failed to present any evidence, either to the state courts, or to this Court, that he was legally insane at the time of the crime. *See e.g. Sneed v. Johnson,* 600 F. 3d 607, 611 (6th Cir. 2010). In light of the fact that petitioner has failed to show that he has an expert who would testify that he was legally insane at the time of the offenses, counsel's failure to raise an insanity defense was not prejudicial to petitioner. *See Abdur'Rahman v. Bell,* 226 F.3d 696, 715 (6th Cir. 2000).

Furthermore, petitioner cannot establish that counsel was ineffective for failing to present an insanity defense at trial, in light of the fact that such a mental state defense would have required counsel to admit that petitioner robbed the victims at gunpoint, which would have been inconsistent with petitioner's defense of misidentification at trial. *See Bowling v. Parker,* 344 F. 3d 487, 507 (6th Cir. 2003).

As one court has noted: "[t]here is considerable empirical evidence

32

that insanity pleas in and of themselves are not received favorably by jurors." *Weekley v. Jones*, 76 F. 3d 1459, 1463 (8th Cir. 1996)(citing C. Boehnert, Characteristics of Successful and Unsuccessful Insanity Pleas, 13 *Law and Human Behavior* 31, 34, 36-37 (1989)).  Since insanity or mental defenses are rarely successful, it would not have been unreasonable for counsel, at least under the facts of this case, to forego such a defense for a stronger defense theory. *See e.g. Silva v. Woodford,* 279 F. 3d 825, 851 (9th Cir. 2002); *see also Sneed,* 600 F. 3d at 611 (counsel not ineffective in failing to present insanity defense where "public's widespread skepticism of the insanity defense at the time of Sneed's trial in 1986 (circa the John Hinkley trial), indicates that this was not an attractive defense").

Petitioner further claims that trial counsel was ineffective for failing to seek an additional evaluation as to petitioner's mental competency after the Forensic Center for Psychiatry found him competent to stand trial, but he has presented no evidence that he was mentally incompetent at the time of trial.  Accordingly, counsel was not ineffective for failing to seek an additional competency evaluation. *See Cowans v. Bagley*, 639 F.3d 241, 250 (6th Cir. 2011)(Defense counsel's failure to request a competency

hearing at capital murder trial did not prejudice defendant, and, therefore, did not amount to ineffective assistance of counsel, where results of the trial would not have changed, given appellate court's determination that defendant was competent).  This part of petitioner's claim is meritless.

Petitioner alleges that trial counsel failed to conduct a proper pretrial investigation and to interview and call his alleged codefendant, his girlfriend, and other persons he was with at the time of his arrest as alibi witnesses.

This issue was raised in petitioner's motion for relief from judgment and found by the trial court to have been abandoned.  Petitioner did not indicate which witnesses "should have been presented at trial nor attach affidavits from any witness showing how they may have testified." *Posey,* No. 08-833-01-FC, at 3-4.  Petitioner did "not explain what investigation his attorney failed to do or how his trial would have been different but for his attorney's representation." *Id.*

Petitioner failed to attach any affidavits from these witnesses to his pleadings filed in the Michigan courts, nor has he provided this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on petitioner's behalf.  Conclusory allegations of

34

ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d at 771. By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).  Petitioner has failed to identify which witnesses should have been called to testify at his trial.  Nor has he attached any offer of proof or any affidavits sworn by such proposed witnesses as to the testimony that would have been offered at trial.  Since petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d at 557.

Petitioner has also failed to show that presenting any alibi witnesses would have led to his acquittal, in light of the fact that petitioner was

35

identified by two eyewitnesses, Banks and Davis, as their assailant. Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d at 527.  The failure to present a proposed alibi witness who would not lead to a defendant's acquittal does not amount to the ineffective assistance of counsel. *Id.*  Petitioner is not entitled to relief on his ineffective assistance of trial counsel claims.

### E. Claim # 7. Ineffective Assistance of Appellate Counsel.

Petitioner's seventh and final claim contends that appellate counsel was ineffective for failing to raise his third through sixth claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  This Court has already determined that petitioner's third through sixth claims are without merit.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.

36

3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## IV. Conclusion

The Court denies the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S.

---

[2] Effective December 1, 2009, Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

473, 484-85 (2000).

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

38

## V.  <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a

writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is

**DENIED.**

IT IS FURTHER ORDERED that petitioner will be granted leave to

appeal *in forma pauperis.*


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  April 29, 2016

I hereby certify that a copy of the foregoing document was served upon
counsel of record on April 29, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager